THOMPSON *et al.*, administrators, *v.* DUNCAN, guardian.

Under the evidence, it appears that the exception to the auditor's report, complaining that the guardian was therein twice charged with the same money, was well-taken.
May 12, 1890.

Evidence.  Verdict.  Guardian and ward.  Before Judge JENKINS.  Wilkinson superior court.  October term, 1889.

S. P. and G. P. Thompson, as administrators of James R. Thompson, who was the guardian of Rebecca McGowan at the time of his death, cited T. C. Dickens, who had been appointed successor of their intestate as guardian, to a settlement of accounts in the court of ordinary.  The case was appealed by consent to the superior court, and there it was referred to an auditor.  On the hearing before the auditor, returns of Thompson, as guardian, were put in evidence.  These returns show, among other things, that for 1868 and 1869 Thompson charged himself with amounts for rent of land in his hands, belonging to his ward.  He did not so charge himself for 1870.  The rent for 1871 he reported to the ordinary was taken for repairing the plantation, the same having been burned out.  He charged himself with $30 received for rent of land for 1872.  In none of his other returns did he mention the rents.  After his death, his administrators made a return in which no mention is made of rents, nor of any sums paid by them to the then guardian, but they state in the return that on January 10, 1884, they paid the ward $20, and

December 1, 1884, J W. Lindsey, who is their attorney
in this case, $10. On August 19, 1869, J. R. Thomp-
son, as guardian, receipted to himself as administrator
for $374.48, in full of distributive shares of Sarah and
Rebecca McGowan, orphans of Noah McGowan de-
ceased, for whom he was administrator. One Freeman
testified that about ten years ago he began borrowing
money from J. R. Thompson, and did so repeatedly up
to the time of Thompson's death. On February 12,
1884, he gave a note to Thompson for $1,003.90. This
note was due twelve months after date, made payable
to James R. Thompson, or bearer, guardian for Rebecca
Elizabeth McGowan, " for value received," and bore ten
per cent. interest from date. This note was paid to
Thompson January 10, 1885, the principal and interest
paid amounting to $1,104.91. Witness understood it
was the girl's money. Various witnesses testified as to
the yearly rental value of the lands, placing it at from
$15 to $30. One witness testified that he rented the
lands in 1871 and 1872. In 1871 he paid nothing as
rent, except to repair the fencing. The second year he
paid nothing. Another testified that in April, 1884,
James R. Thompson told him that he (Thompson) was
due his ward, now Mrs. Dickens, about $1,800 or $2,000.
Dickens testified that he had received, as guardian, at
one time, $1,100 and other sums; his receipts would
show. One of the administrators testified that the
lands went into the hands of J. R. Thompson as guar-
dian in 1867 ; that he cultivated the lands one year and
repaired the fence for the rent ; that he said, before he
died, that he had reserved sufficient funds to settle with
his ward, that Freeman owed him, individually, $1,000,
and he expected to buy lands with it. Another testified
that J. R. Thompson told him that the money due him
by Freeman was his money individually; he thought
he owed his ward about $600 or $800, and what Free-

man owed him would more than pay her, and he made the note payable as guardian for that purpose.

The auditor found that there appeared from the returns, charging Thompson with interest on amounts received by him as shown by the returns, including the $374.40, and crediting him with amounts which his returns showed he had paid out, and his administrators in their return claim to have paid out, a balance due to the ward amounting to $821.72. He further found that for the years 1862 to 1882 inclusive, there was no report of rents of lands, and he therefore charged the guardian with the annual value of the lands approximated at $15 per year, and interest thereon, less commissions. He also found that the note given to Thompson by Freeman had been paid, with interest, and should be charged to Thompson as guardian, making his whole finding in favor of Dickens, guardian, to February 15, 1885, $2,182.03. To this report the administrators excepted on the following grounds:

(1) The auditor erred in this: After charging their intestate with the amount shown to be due his ward by the records from the court of ordinary, to wit, $821.72, increased by the annual rents of the lands for the years in which he returned no rents, to the amount of $255.40, both sums amounting to $1,077.12, the same being the full amount that as guardian he could have received from any and all sources, the auditor then increased the amount of his finding by adding the sum of $1,104.91 that the administrators collected from Freeman on the note payable to their intestate, and as guardian; when the preponderance of the testimony showed that this amount due on the note was the same fund that their intestate received for his ward, as shown by the records, and loaned to Freeman as an investment.

(2) The auditor erred in not allowing a credit of $440 that these administrators had themselves paid on said indebtedness.

These exceptions were approved by the court and submitted to a jury. It was agreed that the receipt of payments made by the administrators of Thompson to Dickens, as guardian, or his attorney, should be allowed as a credit on the amount found by the jury to be due to Dickens, "subject to such agreement as was made by Mr. J. E. Hightower, the attorney of Dickens, and the counsel for movant, at the hearing of the auditor." The jury found against each of the exceptions and in favor of the report, and judgment was entered for the full amount found by the auditor. The administrators moved for a new trial, which was refused, and they excepted.

J. W. LINDSEY, for plaintiffs in error.

F. CHAMBERS and J. E. HIGHTOWER, *contra*.

SIMMONS, Justice.

We think the court erred in not granting a new trial in this case upon the ground that the verdict was contrary to evidence and without evidence to support it. It seems to us, from the evidence sent up in this record, that the jury should have sustained the first exception to the report of the auditor. After a full investigation by the auditor of the accounts of Thompson, all the money that was ever traced into his hands amounted to $821.72. The auditor charged him also with rent from the year 1872 to 1882 inclusive, to the amount of $255.40, making in the aggregate, for money received and for rent of the land, $1,077.12. This is all which the evidence shows Thompson to be liable for. It appears that one Freeman had borrowed money from Thompson, and that the latter, at his death, held Freeman's note, payable to him as guardian, for $1,003.90. The auditor charged this note also against Thompson, and the jury found that it was a proper charge, by finding against the first exception to the auditor's report. Under the

v. 85-35

evidence in this record, we think the jury should have sustained this exception. The evidence fails entirely to show that Thompson ever received any money more than $821.72 and the rents. And to charge him with that amount, and also with the amount of Freeman's note, seems to us, under the evidence, to be unjust. We think it very likely that the money which Thompson received as guardian was loaned to Freeman, as he testifies that he commenced borrowing money from Thompson some ten years before the trial, paying ten per cent. interest thereon. Thus it seems that the auditor and the jury charged Thompson twice for the same money. We think, therefore, that the court erred in not granting a new trial, because there is no evidence going to show that Thompson ever received any other money than $821.72 and the rents. If Thompson ever received any other money, it was the duty of the plaintiff to show it. *Judgment reversed.*